**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| BRANDI BANKS | ) | CASE NO. |
| 4971 Appleridge Ct. | ) | |
| Dayton, OH 45424 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES AND** |
| | ) | **INJUNCTIVE RELIEF** |
| CENTRAL MICHIGAN UNIVERSITY | ) | |
| 2130 Fifth St., Area B, Bldg. 50 | ) | **(Jury Demand Endorsed Herein)** |
| Wright-Patterson AFB, OH 45433 | ) | |
| | ) | |
| **Serve also:** | ) | |
| CENTRAL MICHIGAN | ) | |
| UNIVERSITY | ) | |
| 1200 South Franklin St. | ) | |
| Mount Pleasant, MI 48859 | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| DORWOOD ERNEST BEDFORD, JR. | ) | |
| c/o CENTRAL MICHIGAN | ) | |
| UNIVERSITY | ) | |
| 1200 South Franklin St. | ) | |
| Mount Pleasant, MI 48859 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Brandi Banks by and through undersigned counsel, as her Complaint against the

DefendantS, states and avers the following:

## PARTIES

1. Banks is a resident of the city of Dayton, Montgomery County, Ohio.

2. Defendant Central Michigan University ("CMU") is a foreign public research university that

provides services in the State of Ohio. The relevant location of the events and omissions

of this Complaint took place was 2130 Fifth Street, Area B, Building 50, Wright-Patterson Air Force Base, Ohio 45433.

3. CMU is, and was at all times hereinafter mentioned, Banks' employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 126 § 12101, *et seq.*, and Ohio R.C. §4112.01, *et seq*.

4. Defendant Dorwood Ernest Bedford, Jr. is, and was at all times hereinafter mentioned, the Executive Director of Global Campus Enterprise, Student Recruitment, and Retention, and the direct manager of Banks' supervisor at CMU.

5. Within 300 days of the adverse employment actions described herein, Banks dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC") against CMU, Charge No. DAYB6(30342)04202022; 22A-2022-03255 ("EEOC Charge").

6. On or about February 9, 2023, the OCRC issued and mailed a Notice of Right to Sue letter to Banks regarding her OCRC Charge.

7. Banks received the Notice of Right to Sue letter from the OCRC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Banks has filed this Complaint on or before the 30-day deadline set forth in the Notice of Right to Sue letter.

9. Banks has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All the material events alleged in this Complaint occurred in or around Greene County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1), (2), and/or (3).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, in that Plaintiff is alleging federal law claims under Title VII and the ADA.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

15. Banks is a former employee of CMU.

16. At all times noted herein, Banks was qualified for her position with CMU.

17. At all times noted herein, Banks could fully perform the essential functions of her job, with or without a reasonable accommodation.

18. Banks worked for CMU as an Assistant Director of Enrollment from March 3, 2019, until CMU unlawfully terminated her employment on or about August 31, 2022.

19. Banks is African American, placing her in a protected class for her race.

20. Banks suffers from anxiety and depression, placing her in a protected class for her disabilities.

21. In the alternative, CMU perceived Banks as being disabled.

22. In the alternative, CMU perceived that Banks' medical condition constituted a physical impairment.

23. In the alternative, CMU perceived Banks disability to substantially impair one or more of her major life activities, including working.

24. Despite this actual or perceived disabling condition, Banks was still able to perform the essential functions of her job.

25. Banks was an excellent employee at CMU with no history of discipline, and she had received numerous positive reviews.

26. In May 2021, Defendant Bedford, Jr. (Caucasian) became the Executive Director of Global Campus Enterprise, Student Recruitment, and Retention, making him the direct manager of Banks' supervisor, Dan Maloney (Race Unknown).

27. Banks had very little direct contact with Bedford, Jr. until he held a meeting with the Global Campus staff on or about January 13, 2022.

28. When Bedford, Jr. opened the floor to questions, Banks asked about the new positions Bedford, Jr. created having significantly higher salaries than current employees' despite the positions being comparable.

29. Banks believed this to be a professionally legitimate question and asked it very politely.

30. Bedford, Jr. responded in a defensive manner and was clearly annoyed that Banks had spoken up.

31. In the same meeting, Assistant Director of Enrollment Laura Stermer (Caucasian) also asked Bedford, Jr. a question, however Stermer did so in a rude and disrespectful manner.

32. Despite the aggressive tone Stermer used, Bedford, Jr. was receptive to her question and was happy to answer it.

33. Bedford, Jr. displayed a clear bias towards his Caucasian employees and clear disrespect to Banks because of her race.

4

34. On or about February 16, 2022, Banks spoke with Shawna Patterson-Stephens (African American), the Vice President and Chief Diversity, Equity, and Inclusion Officer, about Bedford, Jr.'s treatment and asked to switch departments.

35. Banks explained why she wanted to switch departments and Patterson-Stephens urged Banks to either contact CMU's Civil Rights department or file a grievance with human resources.

36. Banks followed Patterson-Stephens' advice and reported her concerns to Mary Ann Martinez (Race Unknown) the Executive Director of CMU's Civil Rights department.

37. Over the course of several weeks, Banks spoke with Martinez on numerous occasions and relayed her concerns about Bedford, Jr.'s discriminatory behavior towards her.

38. These conversations constituted protected complaints of racial discrimination.

39. On or about March 25, 2022, Banks met with Scott Hoffman (Race Unknown), the Director of Employee and Labor Relations.

40. During this meeting, Banks again reported her concerns of racial discrimination and expressed that her current work situation was worsening her diagnosed anxiety and depression, which she had previously disclosed to Maloney.

41. On April 1, 2022, Bedford, Jr. demanded a meeting with Banks.

42. Bedford, Jr. only notified Banks of the meeting 45 minutes before it was scheduled to happen.

43. Banks feared the meeting would trigger her conditions, so she reasonable requested that Maloney accompany her, as Banks had a great working relationship with him as her direct supervisor and trusted him.

44. Bedford, Jr. refused to allow Maloney to attend the meeting.

45. When Banks logged on to the virtual meeting, Bedford, Jr. informed her that her position would be terminated effective August 31, 2022.

46. When Bedford, Jr. suggested that the reason for Banks' termination was that CMU would be closing the Wright Patterson AFB location, Banks asked to be transferred to another position.

47. Despite Banks' extremely positive work history at CMU, Bedford, Jr. immediately shut down her request and reiterated that Banks' employment would be terminated on August 31, 2022.

48. This constituted an adverse employment action.

49. Prior to Banks reporting Bedford, Jr. discriminatory behavior, there was no suggestion that Banks' job was in jeopardy.

50. Bedford, Jr. announcing Banks' termination immediately after she reported him for racial discrimination constitutes clear retaliation under Ohio and federal law.

51. On or around May 9, 2022, Banks sent CMU another written complaint outlining the racial discrimination she previously reported, and expressed concern that her termination was retaliation.

52. Almost immediately after Banks sent the letter, she received an email ordering her to clean out her office and ship all of her company property to CMU's main location.

53. For the remainder of her employment, Banks was subjected to a hostile work environment in further retaliation for her complaints of retaliation and discrimination.

54. This constituted another adverse employment action.

55. The above facts demonstrate that CMU engaged in a pattern and practice of race discrimination.

56. The above facts demonstrate that CMU engaged in a pattern and practice of disability discrimination.

57. There was a causal connection between Banks' race and Defendant's termination of Banks.

58. There was a causal connection between Banks' disabilities and Defendant's termination of Banks.

59. CMU's purported reason for Banks' employment termination was pretextual.

60. CMU actually terminated Banks' employment in in an act of discrimination.

61. As a result of the above, Banks has suffered and will continue to suffer damages.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112
### (Defendant Central Michigan University Only)

62. Banks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

63. Throughout her employment, Banks was fully competent to perform her essential job duties.

64. Banks is a member of a statutorily-protected class under R.C. § 4112.02(A).

65. CMU employees treated Banks differently than other similarly situated employees based on her race.

66. CMU violated R.C. § 4112.02(A) *et seq.* by discriminating against Banks due to her race.

67. On or about August 31, 2022, CMU terminated Banks without just cause.

68. Alternatively, Defendant's cited reason for Banks's termination was pretext.

69. At all times material herein, similarly situated non-African American employees were not discriminated against by Defendant.

70. Defendant terminated Banks based on her race.

7

71. Banks' race was a determinative factor in Defendant's decisions to take multiple adverse actions against Banks.

72. Defendant violated R.C. § 4112.01 *et. seq.* when it terminated Banks based on her race.

73. Banks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

74. As a direct and proximate result of Defendant's conduct, Banks has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Central Michigan University Only)

75. Banks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

76. Throughout her employment, Banks was fully competent to perform her essential job duties.

77. Banks is a member of a statutorily-protected class under Title VII.

78. CMU employees treated Banks differently than other similarly situated employees based on her race.

79. CMU violated Title VII by discriminating against Banks due to her race.

80. On or about August 31, 2022, CMU terminated Banks without just cause.

81. Alternatively, Defendant's cited reason for Banks's termination was pretext.

82. At all times material herein, similarly situated non-African American employees were not discriminated against by Defendant.

83. Defendant terminated Banks based on her race.

84. Banks' race was a determinative factor in Defendant's decisions to take multiple adverse actions against Banks.

85. Defendant violated Title VII when it terminated Banks based on her race.

86. Banks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to Title VII.

87. As a direct and proximate result of Defendant's conduct, Banks has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112
### (Defendant Central Michigan University Only)

88. Banks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. Banks suffers from depression and anxiety.

90. Banks is disabled.

91. In the alternative, CMU perceived Banks as being disabled.

92. Banks' condition constituted a physical impairment.

93. Banks' condition substantially impaired one or more of her major life activities, including working.

94. CMU perceived Banks' condition to substantially impair one or more of his/her major life activities including working.

95. CMU treated Banks differently than other similarly-situated employees based on her disabling condition.

96. CMU treated Banks differently than other similarly-situated employees based on his/her perceived disabling condition.

97. On or about August 31, 2022, Defendant terminated Banks' employment without just cause.

98. Alternatively, Defendant's cited reason for Banks' termination was pretext.

99. Defendant terminated Banks' employment based on her disability.

100. Defendant terminated Banks' employment based on her perceived disability.

101. Defendant violated R.C. § 4112.02 when it discharged Banks based on her disability.

102. Defendant violated R.C. § 4112.02 when it discharged Banks based on her perceived disability.

103. Defendant violated R.C. § 4112.02 by discriminating against Banks based on her disabling condition.

104. Defendant violated R.C. § 4112.02 by discriminating against Banks based on his/her perceived disabling condition.

105. Banks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

106. As a direct and proximate result of Defendant's conduct, Banks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (Defendant Central Michigan University Only)

107. Banks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Banks suffers from depression and anxiety.

109. Banks is disabled.

110. In the alternative, CMU perceived Banks as being disabled.

111. Banks' condition constituted a physical impairment.

112. Banks' condition substantially impaired one or more of her major life activities, including working.

113. CMU perceived Banks' condition to substantially impair one or more of his/her major life activities including working.

114. CMU treated Banks differently than other similarly-situated employees based on her disabling condition.

115. CMU treated Banks differently than other similarly-situated employees based on his/her perceived disabling condition.

116. On or about August 31, 2022, Defendant terminated Banks' employment without just cause.

117. Alternatively, Defendant's cited reason for Banks' termination was pretext.

118. Defendant terminated Banks' employment based on her disability.

119. Defendant terminated Banks' employment based on her perceived disability.

120. Defendant violated the ADA when it discharged Banks based on her disability.

121. Defendant violated the ADA when it discharged Banks based on her perceived disability.

122. Defendant violated the ADA by discriminating against Banks based on her disabling condition.

123. Defendant violated the ADA by discriminating against Banks based on his/her perceived disabling condition.

124. Banks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

125. As a direct and proximate result of Defendant's conduct, Banks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

11

## COUNT V: RETALIATION
### (Defendant Central Michigan University Only)

126. Banks restates each and every prior paragraph of this complaint, as if it were fully restated herein.

127. As a result of the Defendant's discriminatory conduct described above, Banks complained about the discrimination she was experiencing.

128. Subsequent to Banks reporting of discrimination to Defendant, Banks' employment was terminated.

129. Defendant's actions were retaliatory in nature based on Banks' opposition to the unlawful discriminatory conduct.

130. Pursuant to Title VII, the ADA, and R.C. §4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

131. Banks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to Title VII, the ADEA, and R.C. § 4112.01 et seq.

132. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Banks, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Defendant Dorwood Ernest Bedford, Jr. Only)

133. Banks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

134. Pursuant to R.C. § 4112.02(J), it is unlawful "[f] or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

135. Bedford, Jr. aided, abetted, incited, coerced, and/or compelled CMU's discriminatory treatment of Banks.

136. Bedford, Jr. aided, abetted, incited, coerced, and/or compelled CMU's discriminatory termination of Banks.

137. As the direct manager of Banks' supervisor, Bedford, Jr. was a trusted supervisor for Banks.

138. Bedford, Jr. violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

139. Banks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

140. As a direct and proximate result of Defendant's conduct, Banks has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Banks demands from Defendants the following:

a)  Issue a permanent injunction:

  i.  Requiring Defendants to abolish discrimination, harassment, and retaliation;

  ii.  Requiring allocation of significant funding and trained staff to implement all changes within two years;

  iii.  Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

  iv.  Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  v.  Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b)  Issue an order requiring Defendants to expunge her personnel file of all negative documentation;

c)  An award against each Defendant for compensatory and monetary damages to compensate Banks for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d)  An award of punitive damages against each Defendant in an amount in excess of $25,000;

14

e) An award of reasonable attorneys' fees and non-taxable costs for Banks's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**SPITZ, THE EMPLOYEES' LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244
Fax: (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

*Attorneys for Plaintiff Brandi Banks*

## JURY DEMAND

Plaintiff Brandi Banks demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
**SPITZ, THE EMPLOYEES' LAW FIRM**

15